LYNN HUBBARD, III, SBN 69773
**DISABLED ADVOCACY GROUP, APLC**
12 Williamsburg Lane
Chico, CA 95926
Telephone: (530) 895-3252
Facsimile: (530) 894-8244
Email: USDCSo@HubsLaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sandi Rush,<br><br>        Plaintiff,<br><br>        vs.<br><br>Encinitas Town Center Associates I, LLC; Zelman Development Co.; Party City Corp. dba Party City #526; Office Depot, Inc. dba Office Depot #965; Best Buy Stores, LP dba Best Buy #1187; Ross Dress for Less, Inc. dba Ross Dress for Less #359; Barnes & Noble Booksellers, Inc. dba Barnes & Noble Super Store #2785; Stater Bros. Markets dba Stater Bros. Market #6158; K R Schulz Management, Inc. dba McDonald's #14229; McDonald's Corporation; Petsmart, Inc. dba Petsmart #144; Target Corporation dba Target #1029,<br><br>        Defendants. | No. _**'11 CV2987 DMS POR**_<br><br>**Plaintiff's Complaint** |

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

Page 1

# I. SUMMARY

1.      This is a civil rights action by plaintiff Sandi Rush ("Rush") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complexes known as:

Party City #526
1006 North El Camino Real
Encinitas, CA 92024
(hereafter "the Party City Facility")

Office Depot #965
1018 North El Camino Real
Encinitas, CA 92024
(hereafter "the Office Depot Facility")

Best Buy #1187
1046 North El Camino Real
Encinitas, CA 92024
(hereafter "the Best Buy Facility")

Ross Dress for Less #359
1038 North El Camino Real
Encinitas, CA 92024
(hereafter "the Ross Dress for Less Facility")

Barnes & Noble Super Store #2785
1040 North El Camino Real
Encinitas, CA 92024
(hereafter "the Barnes & Noble Facility")

Stater Bros. Market #6158
1048 North El Camino Real
Encinitas, CA 92024
(hereafter "the Stater Bros. Facility")

McDonald's #14229
1064 North El Camino Real
Encinitas, CA 92024
(hereafter "the McDonald's Facility")

Petsmart #144
1035 North El Camino Real
Encinitas, CA 92024
(hereafter "the Petsmart Facility")

Target #1029
1010 North El Camino Real
Encinitas, CA 92024
(hereafter "the Target Facility")

Encinitas Ranch Town Center
1006-1064 North El Camino Real
Encinitas, CA 92024
(hereafter "the Encinitas Ranch Town Center Facility")

2.     Rush seeks damages, injunctive and declaratory relief, attorney fees and costs against pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) and related California statutes:

- Party City Corp. dba Party City #526; Encinitas Town Center Associates I, LLC; and, Zelman Development Co. (collectively, "Party City");
- Office Depot, Inc. dba Office Depot #965; Encinitas Town Center Associates I, LLC; and, Zelman Development Co. (collectively, "Office Depot");
- Best Buy Stores, LP dba Best Buy #1187; Encinitas Town Center Associates I, LLC; and, Zelman Development Co. (collectively, "Best Buy");
- Ross Dress for Less, Inc. dba Ross Dress for Less #359; Encinitas Town Center Associates I, LLC; and, Zelman Development Co. (collectively, "Ross Dress for Less");

- Barnes & Noble Booksellers, Inc. dba Barnes & Noble Super Store #2785; Encinitas Town Center Associates I, LLC; and, Zelman Development Co. (collectively, "Barnes & Noble");

- Stater Bros. Markets dba Stater Bros. Market #6158; Encinitas Town Center Associates I, LLC; and, Zelman Development Co. (collectively, "Stater Bros.");

- K R Schulz Management, Inc. dba McDonald's #14229; McDonald's Corporation; and, Zelman Development Co. (collectively, "McDonald's");

- Petsmart, Inc. dba Petsmart #144; Encinitas Town Center Associates I, LLC; and, Zelman Development Co. (collectively, "Petsmart");

- Target Corporation dba Target #1029; and Zelman Development Co. (collectively "Target"); and,

- Encinitas Town Center Associates I, LLC; and, Zelman Development Co. (collectively, "Encinitas Ranch Town Center").

## II. JURISDICTION

3.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.     Supplemental jurisdiction for claims brought under parallel California law—arising from the same nucleus of operative facts—is predicated on 28 U.S.C. § 1367.

5.     Rush's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6.     All actions complained of herein take place within the jurisdiction of the United States District Court, Southern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

1

## IV. PARTIES

2     7.     Party City owns, operates, and/or leases the Party City Facility, and

3     consists of a person (or persons), firm, and/or corporation.

4     8.     Office Depot owns, operates, and/or leases the Office Depot

5     Facility, and consists of a person (or persons), firm, and/or corporation.

6     9.     Best Buy owns, operates, and/or leases the Best Buy Facility, and

7     consists of a person (or persons), firm, and/or corporation.

8     10.     Ross Dress for Less owns, operates, and/or leases the Ross Dress for

9     Less Facility, and consists of a person (or persons), firm, and/or corporation.

10     11.     Barnes & Noble owns, operates, and/or leases the Barnes & Noble

11     Facility, and consists of a person (or persons), firm, and/or corporation.

12     12.     Stater Bros. owns, operates, and/or leases the Stater Bros. Facility,

13     and consists of a person (or persons), firm, and/or corporation.

14     13.     McDonald's owns, operates, and/or leases the McDonald's Facility,

15     and consists of a person (or persons), firm, and/or corporation.

16     14.     Petsmart owns, operates, and/or leases the Petsmart Facility, and

17     consists of a person (or persons), firm, and/or corporation.

18     15.     Target owns, operates, and/or leases the Target Facility, and consists

19     of a person (or persons), firm, and/or corporation.

20     16.     Encinitas Ranch Town Center owns, operates, and/or leases the

21     Encinitas Ranch Town Center Facility, and consists of a person (or persons),

22     firm, and/or corporation.

23     17.     Rush is a paraplegic who is unable to walk or stand, and requires the

24     use of a wheelchair when traveling about in public.  Consequently, Rush is

25     "physically disabled," as defined by all applicable California and United States

26     laws, and a member of the public whose rights are protected by these laws.

27

28

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

Page 5

## V. FACTS

18.     The Party City Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

19.     The Office Depot Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

20.     The Best Buy Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

21.     The Ross Dress for Less Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

22.     The Barnes & Noble Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

23.     The Stater Bros. Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

24.     The McDonald's Facility is an establishment serving food and drink, open to the public, which is intended for nonresidential use and whose operation affects commerce.

25.     The Petsmart Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

26.   The Target Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

27.   The Encinitas Ranch Town Center Facility is a sales or retail establishment, open to the public, which is intended for nonresidential use and whose operation affects commerce.

28.   Rush visited these facilities and encountered barriers (both physical and intangible) that interfered with—if not outright denied—his ability to use and enjoy the goods, services, privileges, and accommodations offered at both facilities.

29.   To the extent known by Rush, the barriers at the Party City Facility included, but are not limited to, the following:

- The slopes and cross slopes of at least on of the disabled parking spaces exceed 2.0%.  Without a level parking space, it is difficult for Rush to unload/transfer from her vehicle as either 1) her wheelchair rolls, or 2) her platform lift cannot sit level;

- The access aisle adjacent to the disabled parking spaces is painted entirely blue, has no striping, and lacks the words "NO PARKING" painted within.  Without the required striping and no parking language, drivers may park their vehicles in the aisle, thus rendering it – and the adjacent parking spaces – unusable by Rush;

- The signage at the van accessible parking space is incorrect, thus making it difficult for Rush to determine which spaces to park in when traveling by van.  Additionally, without the correct signage posted, Rush cannot have vehicles towed that are illegally parked in disabled parking spaces;

1
2
3

- Many of the aisle through the store are too narrow due to merchandise, thus making them difficult – if not impossible – for Rush to traverse;

4
5
6

- The signage posted on the restroom door is incorrect, thus making it difficult for Rush to determine if the facility is intended to be accessible to her;

7
8
9

- There is no signage posted at the strike side of the restroom door that would indicate to Rush whether or not the facility is intended to be accessible to her;

10
11
12

- The water closet obstructs the clear floor space required to access the disposable seat cover dispenser, thus making the dispenser impossible for Rush to reach and use;

13
14

- The disposable seat cover dispenser is mounted too high, thus making it impossible for Rush to reach and use;

15
16
17

- Due to its location above and behind the water closet, the disposable seat cover dispenser is outside of the required reach range limits and, thus, impossible for Ruhs to reach and use;

18
19

- The toilet tissue dispenser is mounted too high, thus making it impossible for Rush to reach and use;

20
21

- The toilet tissue dispenser is mounted too far from the front of the water closet, thus making it impossible for Rush to reach and use;

22
23

- The toilet tissue dispenser is mounted too far from the back wall, thus making it impossible for Rush to reach and use;

24
25

- The pipes beneath the lavatory are incompletely wrapped, thus causing Rush to risk burning her legs when using; and,

26
27
28

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

- The operable part of the paper towel dispenser is mounted too high, thus making it difficult – if not impossible – for Rush to reach and use.

These barriers prevented Rush from enjoying full and equal access.

30. To the extent known by Rush, the barriers at the Office Depot Facility included, but are not limited to, the following:

- The slopes and cross slopes of at least on of the disabled parking spaces exceed 2.0%. Without a level parking space, it is difficult for Rush to unload/transfer from her vehicle as either 1) her wheelchair rolls, or 2) her platform lift cannot sit level;

- The access aisle adjacent to the disabled parking spaces is painted entirely blue, has no striping, and lacks the words "NO PARKING" painted within. Without the required striping and no parking language, drivers may park their vehicles in the aisle, thus rendering it – and the adjacent parking spaces – unusable by Rush;

- The signage at the van accessible parking space is incorrect, thus making it difficult for Rush to determine which spaces to park in when traveling by van. Additionally, without the correct signage posted, Rush cannot have vehicles towed that are illegally parked in disabled parking spaces;

- The water closet obstructs the clear floor space required to access the disposable seat cover dispenser, thus making the dispenser impossible for Rush to reach and use;

- The disposable seat cover dispenser is mounted too high, thus making it impossible for Rush to reach and use;

- Due to its location above and behind the water closet, the disposable seat cover dispenser is outside of the required reach range limits and, thus, impossible for Ruhs to reach and use;
- The pipes beneath the lavatory are not completely wrapped, thus causing Rush to risk burning her legs when using;
- The paper towel dispenser is mounted too high, thus making it difficult – if not impossible – for Rush to reach and use;.

These barriers prevented Rush from enjoying full and equal access.

31.    To the extent known by Rush, the barriers at the Best Buy Facility included, but are not limited to, the following:

- The disposable seat cover dispenser is an obstruction to the side grab bar.  Without full use of this bar, it becomes difficult for Rush to transfer from her wheelchair to the water closet;
- The front roll of toilet tissue is too far from the front of the water closet, thus making it difficult – if not impossible – for Rush to reach and use;
- The front roll of toilet tissue is too far from the back wall, thus making it difficult – if not impossible – for Rush to reach and use;
- The pipes beneath the lavatories are not completely wrapped, thus causing Rush to risk burning her legs when using; and,
- The operable parts of the soap dispensers are more than 40 inches from the floor, thus making them difficult for Rush to reach and use.

These barriers prevented Rush from enjoying full and equal access.

32.    To the extent known by Rush, the barriers at the Ross Dress for Less Facility included, but are not limited to, the following:

- The dressing room bench is not 24 inches wide by 48 inches long, or, in the alternative, a minimum of 42 inches long with 30 inches of

clear space at the end of the bench, thus making it impossible for Rush to complete a diagonal transfer;

- The interior lock of the water closet stall door requires twisting, pinching and/or grasping to operate, thus making it difficult for Rush to use;

- The disposable seat cover dispenser is mounted too high, thus making it difficult for Rush to reach and use;

- The front roll of toilet tissue is too far from the back wall, thus making it difficult for Rush to reach and use;

- The front roll of toilet tissue is too far from the front of the water closet, thus making it difficult for Rush to reach and use;

- The flush valve is not located on the wide side of the water closet, thus making it difficult – if not impossible – for Rush to reach and use;

- The pipes beneath the lavatories are not completely wrapped, thus causing Rush to risk burning her legs when using;

- The paper towel dispenser is mounted too high, thus making it difficult – if not impossible – for Rush to reach and use;

- There is insufficient strike side clearance when exiting the restroom, thus making it difficult for Rush to pull open the door;

- All of the check-out counters are too high, thus making it difficult for Rush to complete her transactions; and,

- The pay point machines are all too high, thus making them difficult for Rush to reach and use;.

These barriers prevented Rush from enjoying full and equal access.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

33.    To the extent known by Rush, the barriers at the Barnes & Noble Facility included, but are not limited to, the following:

- There is no handle mounted below the water closet stall door lock, thus making it difficult for Rush to completely close the door;
- The disposable seat cover dispensers are both mounted too high, thus making them difficult – if not impossible – for Rush to reach and use;
- The water closet obstructs the clear floor space required to access the disposable seat cover dispensers, thus making the dispensers difficult – if not impossible – for Rush to reach and use;
- Due to their location above and behind the water closet, the disposable seat cover dispensers are mounted outside of the required reach range limits and are, thus, difficult – if not impossible – for Rush to reach and use;
- The toilet tissue dispenser is too far from the back wall, thus making it difficult for Rush to reach and use;
- The toilet tissue dispenser is too far from the front of the water closet, thus making it difficult for Rush to reach and use;
- The pipes beneath the left-hand lavatory are not completely wrapped (those on the right-hand lavatory are not wrapped at all), thus causing Rush to risk burning her legs when using;
- There is insufficient strike side clearance when exiting the restroom, thus making it difficult for Rush to pull open the door; and,
- The check-out counter is too high, thus making it difficult for Rush to complete her transactions.

These barriers prevented Rush from enjoying full and equal access.

34.     To the extent known by Rush, the barriers at the Stater Bros. Facility included, but are not limited to, the following:

- The water closet stall door lock requires twisting, pinching and/or grasping to operate, thus making it difficult for Rush to use;
- The clothes hook on the interior of the water closet stall is mounted too high, thus making it difficult for Rush to reach and use;
- The toilet tissue dispenser is mounted too high, thus making it difficult for Rush to reach and use; and,
- The pipes beneath the lavatory are not completely wrapped, thus causing Rush to risk burning her legs when using.

These barriers prevented Rush from enjoying full and equal access.

35.     To the extent known by Rush, the barriers at the McDonald's Facility included, but are not limited to, the following:

- The signage at all of the disabled parking spaces is incorrect, thus making it difficult for Rush – as well as other drivers – to determine which spaces are intended for the sole use of the disabled. Additionally, without the correct signage posted, Rush cannot have vehicles towed that are illegally parked in disabled parking spaces;
- Because there is no cut-out ramp at the access aisle, it forces the user of the left-most disabled parking space to travel behind vehicles other than her own to reach the entrance.  Because Rush is in a wheelchair and sits very low to the ground, it is dangerous for her to travel behind vehicles as they may revere without seeing her;
- When left open (as appears to be the common practice), the door in front of the right-most disabled parking space completely obstructs the signage identifying the space as accessible, thus making it

difficult for Rush – as well as other drivers – to determine that the space is intended for the sole use of the disabled;

- There is no International Symbol of Accessibility mounted at the front entrance, thus making it difficult for Rush to determine if 1) the restaurant is intended to be accessible to her, and 2) if this particular entrance is intended to be accessible to her or if there is another that is;

- There is no handle mounted below the water closet stall door lock, thus making it difficult for Rush to completely shut the door; and,

- The toilet tissue dispenser obstructs the use of the side grab bar. Without full use of this bar, it becomes difficult for Rush to transfer from her wheelchair to the water closet.

These barriers prevented Rush from enjoying full and equal access.

36.    To the extent known by Rush, the barriers at the Petsmart Facility included, but are not limited to, the following:

- The slopes and cross slopes of at least on of the disabled parking spaces exceed 2.0%.  Without a level parking space, it is difficult for Rush to unload/transfer from her vehicle as either 1) her wheelchair rolls, or 2) her platform lift cannot sit level;

- The access aisle adjacent to the disabled parking spaces is painted entirely blue, has no striping, and lacks the words "NO PARKING" painted within.  Without the required striping and no parking language, drivers may park their vehicles in the aisle, thus rendering it – and the adjacent parking spaces – unusable by Rush;

- The toilet tissue dispenser is too far from the front of the water closet, thus making it difficult for Rush to reach and use;

- The toilet tissue dispenser is too far from the back wall, thus making it difficult for Rush to reach and use; and,

- The toilet tissue dispenser obstructs the use of the side grab bar. Without full use of this bar, it becomes difficult for Rush to transfer from her wheelchair to the water closet; and,

- The pipes beneath the lavatory are not completely wrapped, thus causing Rush to risk burning her legs when using.

These barriers prevented Rush from enjoying full and equal access.

37.     To the extent known by Rush, the barriers at the Target Facility included, but are not limited to, the following:

- The slopes and cross slopes of multiple access aisles exceed 2.0%, thus making it difficult for Rush to to unload/transfer from her vehicle as either 1) her wheelchair rolls, or 2) her platform lift cannot sit level;

- The signage at the van accessible parking spaces is incorrect, thus making it difficult for Rush to determine which spaces to park in when traveling by van.  Additionally, without the correct signage posted, Rush cannot have vehicles towed that are illegally parked in disabled parking spaces;

- The water closet obstructs the clear floor space required to access the disposable seat cover dispenser, thus making the dispenser difficult for Rush to reach and use;

- The soap dispenser is mounted too high and is outside of the required reach range limits, thus making it difficult for Rush to reach and use; and,

- There is insufficient clear knee space beneath the lavatories, thus making it difficult for Rush to pull under and reach the controls.

These barriers prevented Rush from enjoying full and equal access.

38.     To the extent known by Rush, the barriers at the Encinitas Ranch Town Center Facility included, but are not limited to, the following:

- The slopes and cross slopes of many of the disabled parking spaces exceed 2.0%. Without a level parking space, it is difficult for Rush to unload/transfer from her vehicle as either 1) her wheelchair rolls, or 2) her platform lift cannot sit level;

- The slopes and cross slopes many of the access aisles adjacent to the disabled parking spaces exceed 2.0%. Without a level access aisle, it is difficult for Rush to unload/transfer from her vehicle as either 1) her wheelchair rolls, or 2) her platform lift cannot sit level;

- Almost all of the access aisles adjacent to the disabled parking spaces are painted entirely blue, has no striping, and lacks the words "NO PARKING" painted within. Without the required striping and no parking language, drivers may park their vehicles in the aisle, thus rendering it – and the adjacent parking spaces – unusable by Rush; and,

- The signage at the van accessible parking spaces is incorrect, thus making it difficult for Rush to determine which spaces to park in when traveling by van. Additionally, without the correct signage posted, Rush cannot have vehicles towed that are illegally parked in disabled parking spaces.

These barriers prevented Rush from enjoying full and equal access.

39.     Rush was also deterred from visiting the Party City Facility because she knew that the Party City Facility's goods, services, facilities, privileges,

advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Party City Facility because of the future threats of injury created by these barriers.

40.    Rush was also deterred from visiting the Office Depot Facility because she knew that the Office Depot Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Office Depot Facility because of the future threats of injury created by these barriers.

41.    Rush was also deterred from visiting the Best Buy Facility because she knew that the Best Buy Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Best Buy Facility because of the future threats of injury created by these barriers.

42.    Rush was also deterred from visiting the Ross Dress for Less Facility because she knew that the Ross Dress for Less Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Ross Dress for Less Facility because of the future threats of injury created by these barriers.

43.    Rush was also deterred from visiting the Barnes & Noble Facility because she knew that the Barnes & Noble Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Barnes & Noble Facility because of the future threats of injury created by these barriers.

44.     Rush was also deterred from visiting the Stater Bros. Facility because she knew that the Stater Bros. Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Stater Bros. Facility because of the future threats of injury created by these barriers.

45.     Rush was also deterred from visiting the McDonald's Facility because she knew that the McDonald's Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the McDonald's Facility because of the future threats of injury created by these barriers.

46.     Rush was also deterred from visiting the Petsmart Facility because she knew that the Petsmart Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Petsmart Facility because of the future threats of injury created by these barriers.

47.     Rush was also deterred from visiting the Target Facility because she knew that the Target Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues to be deterred from visiting the Target Facility because of the future threats of injury created by these barriers.

48.     Rush was also deterred from visiting the Encinitas Ranch Town Center Facility because she knew that the Encinitas Ranch Town Center Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as herself). She continues

to be deterred from visiting the Encinitas Ranch Town Center Facility because of the future threats of injury created by these barriers.

49.    Rush also encountered barriers at the facilities, which violate state and federal law, but were unrelated to her disability. Nothing within this complaint, however, should be construed as an allegation that Rush is seeking to remove barriers unrelated to his disability.

50.    Party City knew that these elements and areas of the Party City Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Party City has the financial resources to remove these barriers from the Party City Facility (without much difficulty or expense), and make the Party City Facility accessible to the physically disabled.  To date, however, Party City refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

51.    At all relevant times, Party City has possessed and enjoyed sufficient control and authority to modify the Party City Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  Party City has not removed such impediments and has not modified the Party City Facility to conform to accessibility standards.

52.    Office Depot knew that these elements and areas of the Office Depot Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Office Depot has the financial resources to remove these barriers from the Office Depot Facility (without much difficulty or expense), and make the Office Depot Facility accessible to the physically disabled.  To date, however, Office Depot refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

53.     At all relevant times, Office Depot has possessed and enjoyed sufficient control and authority to modify the Office Depot Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  Office Depot has not removed such impediments and has not modified the Office Depot Facility to conform to accessibility standards.

54.     Best Buy knew that these elements and areas of the Best Buy Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Best Buy has the financial resources to remove these barriers from the Best Buy Facility (without much difficulty or expense), and make the Best Buy Facility accessible to the physically disabled.  To date, however, Best Buy refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

55.     At all relevant times, Best Buy has possessed and enjoyed sufficient control and authority to modify the Best Buy Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  Best Buy has not removed such impediments and has not modified the Best Buy Facility to conform to accessibility standards.

56.     Ross Dress for Less knew that these elements and areas of the Ross Dress for Less Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Ross Dress for Less has the financial resources to remove these barriers from the Ross Dress for Less Facility (without much difficulty or expense), and make the Ross Dress for Less Facility accessible to the physically disabled.  To date, however, Ross Dress for Less refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

57.     At all relevant times, Ross Dress for Less has possessed and enjoyed sufficient control and authority to modify the Ross Dress for Less Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.   Ross Dress for Less has not removed such impediments and has not modified the Ross Dress for Less Facility to conform to accessibility standards.

58.     Barnes & Noble knew that these elements and areas of the Barnes & Noble Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Barnes & Noble has the financial resources to remove these barriers from the Barnes & Noble Facility (without much difficulty or expense), and make the Barnes & Noble Facility accessible to the physically disabled.  To date, however, Barnes & Noble refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

59.     At all relevant times, Barnes & Noble has possessed and enjoyed sufficient control and authority to modify the Barnes & Noble Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.   Barnes & Noble has not removed such impediments and has not modified the Barnes & Noble Facility to conform to accessibility standards.

60.     Stater Bros. knew that these elements and areas of the Stater Bros. Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Stater Bros. has the financial resources to remove these barriers from the Stater Bros. Facility (without much difficulty or expense), and make the Stater Bros. Facility accessible to the physically disabled.   To date, however, Stater Bros. refuses to either remove

1  those barriers or seek an unreasonable hardship exemption to excuse non-
2  compliance.

3       61.    At all relevant times, Stater Bros. has possessed and enjoyed
4  sufficient control and authority to modify the Stater Bros. Facility to remove
5  impediments to wheelchair access and to comply with the Americans with
6  Disabilities Act Accessibility Guidelines and Title 24 regulations.  Stater Bros.
7  has not removed such impediments and has not modified the Stater Bros. Facility
8  to conform to accessibility standards.

9       62.    McDonald's knew that these elements and areas of the McDonald's
10  Facility were inaccessible, violate state and federal law, and interfere with (or
11  deny) access to the physically disabled.  Moreover, McDonald's has the financial
12  resources to remove these barriers from the McDonald's Facility (without much
13  difficulty or expense), and make the McDonald's Facility accessible to the
14  physically disabled.  To date, however, McDonald's refuses to either remove
15  those barriers or seek an unreasonable hardship exemption to excuse non-
16  compliance.

17      63.    At all relevant times, McDonald's has possessed and enjoyed
18  sufficient control and authority to modify the McDonald's Facility to remove
19  impediments to wheelchair access and to comply with the Americans with
20  Disabilities Act Accessibility Guidelines and Title 24 regulations.  McDonald's
21  has not removed such impediments and has not modified the McDonald's
22  Facility to conform to accessibility standards.

23      64.    Petsmart knew that these elements and areas of the Petsmart Facility
24  were inaccessible, violate state and federal law, and interfere with (or deny)
25  access to the physically disabled.  Moreover, Petsmart has the financial resources
26  to remove these barriers from the Petsmart Facility (without much difficulty or
27  expense), and make the Petsmart Facility accessible to the physically disabled.

28

To date, however, Petsmart refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

65.    At all relevant times, Petsmart has possessed and enjoyed sufficient control and authority to modify the Petsmart Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  Petsmart has not removed such impediments and has not modified the Petsmart Facility to conform to accessibility standards.

66.    Target knew that these elements and areas of the Target Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, Target has the financial resources to remove these barriers from the Target Facility (without much difficulty or expense), and make the Target Facility accessible to the physically disabled.  To date, however, Target refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

67.    At all relevant times, Target has possessed and enjoyed sufficient control and authority to modify the Target Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  Target has not removed such impediments and has not modified the Target Facility to conform to accessibility standards.

68.    Encinitas Ranch Town Center knew that these elements and areas of the Encinitas Ranch Town Center Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Encinitas Ranch Town Center has the financial resources to remove these barriers from the Encinitas Ranch Town Center Facility (without much difficulty or expense), and make the Encinitas Ranch Town Center Facility

accessible to the physically disabled.  To date, however, Encinitas Ranch Town Center refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

69.     At all relevant times, Encinitas Ranch Town Center has possessed and enjoyed sufficient control and authority to modify the Encinitas Ranch Town Center Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations.  Encinitas Ranch Town Center has not removed such impediments and has not modified the Encinitas Ranch Town Center Facility to conform to accessibility standards.

VI. FIRST CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Party City Facility)

70.     Rush incorporates the allegations contained in paragraphs 1 through 69 for this claim.

71.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

72.     Party City discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Party City Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

73.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

74.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

75.    Here, Rush alleges that Party City can easily remove the architectural barriers at Party City Facility without much difficulty or expense, and that Party City violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

76.    In the alternative, if it was not "readily achievable" for Party City to remove the Party City Facility's barriers, then Party City violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

Failure to Design and Construct an Accessible Facility

77.    On information and belief, the Party City Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

78.    The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

79.     Here, Party City violated the ADA by designing or constructing (or both) the Party City Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[1]

<u>Failure to Make an Altered Facility Accessible</u>

80.     On information and belief, the Party City Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

81.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. <u>Id.</u>

82.     Here, Party City altered the Party City Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

83.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

84.     Here, Party City violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Party City Facility, when

---

[1]     Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

Page 26

these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

85.     Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

86.     Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Party City violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

VII. SECOND CLAIM

**Disabled Persons Act**

(The Party City Facility)

87.     Rush incorporates the allegations contained in paragraphs 1 through 86 for this claim.

88.     California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

89.     California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

90.     Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

91.     Here, Party City discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Party City Facility.  Party City also violated Rush's rights under the ADA, and, therefore,

infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

92.   <u>For each offense</u> of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

93.   She also seeks to enjoin Party City from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## VIII. THIRD CLAIM

### Unruh Civil Rights Act

(The Party City Facility)

94.   Rush incorporates the allegations contained in paragraphs 1 through 93 for this claim.

95.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

96.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

97.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

98.   Party City's aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations,

advantages, facilities, privileges and services in a business establishment (because of their physical disability).

99.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

100.   Rush was damaged by Party City's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

101.   Rush also seeks to enjoin Party City from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## IX. FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Party City Facility)

102.   Rush incorporates the allegations contained in paragraphs 1 through 101 for this claim.

103.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

104.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

105.   Rush alleges the Party City Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Party City Facility was not exempt under Health and Safety Code § 19956.

106.   Party City's non-compliance with these requirements at the Party City Facility aggrieved (or potentially aggrieved) Rush and other persons with

physical disabilities.   Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## X. FIFTH CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Office Depot Facility)

107.   Rush incorporates the allegations contained in paragraphs 1 through 106 for this claim.

108.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

109.   Office Depot discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Office Depot Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

110.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

111.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

112.   Here, Rush alleges that Office Depot can easily remove the architectural barriers at Office Depot Facility without much difficulty or expense, and that Office Depot violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

113.   In the alternative, if it was not "readily achievable" for Office Depot to remove the Office Depot Facility's barriers, then Office Depot violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

114.   On information and belief, the Office Depot Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

115.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

116.   Here, Office Depot violated the ADA by designing or constructing (or both) the Office Depot Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[2]

<u>Failure to Make an Altered Facility Accessible</u>

117.   On information and belief, the Office Depot Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

---

[2]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

118.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

119.   Here, Office Depot altered the Office Depot Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

120.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

121.   Here, Office Depot violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Office Depot Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

122.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

123.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Office Depot violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

# XI. SIXTH CLAIM

## Disabled Persons Act

(The Office Depot Facility)

124.   Rush incorporates the allegations contained in paragraphs 1 through 123 for this claim.

125.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

126.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

127.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

128.   Here, Office Depot discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Office Depot Facility.  Office Depot also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

129.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

130.   She also seeks to enjoin Office Depot from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover

reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XII. SEVENTH CLAIM

### Unruh Civil Rights Act

(The Office Depot Facility)

131. Rush incorporates the allegations contained in paragraphs 1 through 130 for this claim.

132. California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

133. California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

134. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

135. Office Depot's aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

136. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

137. Rush was damaged by Office Depot's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

138.   Rush also seeks to enjoin Office Depot from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XIII. EIGHTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Office Depot Facility)

139.   Rush incorporates the allegations contained in paragraphs 1 through 138 for this claim.

140.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

141.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

142.   Rush alleges the Office Depot Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Office Depot Facility was not exempt under Health and Safety Code § 19956.

143.   Office Depot's non-compliance with these requirements at the Office Depot Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.   Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

XIV. NINTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Best Buy Facility)

144.   Rush incorporates the allegations contained in paragraphs 1 through 143 for this claim.

145.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

146.   Best Buy discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Best Buy Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

147.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

148.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

149.   Here, Rush alleges that Best Buy can easily remove the architectural barriers at Best Buy Facility without much difficulty or expense, and that Best

Buy violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

150.   In the alternative, if it was not "readily achievable" for Best Buy to remove the Best Buy Facility's barriers, then Best Buy violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

151.   On information and belief, the Best Buy Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

152.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

153.   Here, Best Buy violated the ADA by designing or constructing (or both) the Best Buy Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[3]

<u>Failure to Make an Altered Facility Accessible</u>

154.   On information and belief, the Best Buy Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

155.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the

---

[3]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

156.   Here, Best Buy altered the Best Buy Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

157.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

158.   Here, Best Buy violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Best Buy Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

159.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

160.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Best Buy violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

XV. TENTH CLAIM

**Disabled Persons Act**

(The Best Buy Facility)

161.   Rush incorporates the allegations contained in paragraphs 1 through 160 for this claim.

162.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

163.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

164.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

165.   Here, Best Buy discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Best Buy Facility.   Best Buy also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

166.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

167.   She also seeks to enjoin Best Buy from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

# XVI. ELEVENTH CLAIM

## Unruh Civil Rights Act

(The Best Buy Facility)

168.   Rush incorporates the allegations contained in paragraphs 1 through 167 for this claim.

169.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

170.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

171.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

172.   Best Buy's aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

173.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

174.   Rush was damaged by Best Buy's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

175.   Rush also seeks to enjoin Best Buy from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## XVII. TWELFTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Best Buy Facility)

176.   Rush incorporates the allegations contained in paragraphs 1 through 175 for this claim.

177.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

178.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

179.   Rush alleges the Best Buy Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Best Buy Facility was not exempt under Health and Safety Code § 19956.

180.   Best Buy's non-compliance with these requirements at the Best Buy Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.   Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XVIII. THIRTEENTH CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Ross Dress for Less Facility)

181.   Rush incorporates the allegations contained in paragraphs 1 through 180 for this claim.

182.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

1  (or use) of goods, services, facilities, privileges, and accommodations offered by

2  any person who owns, operates, or leases a place of public accommodation. 42

3  U.S.C. § 12182(a).

4       183.   Ross Dress for Less discriminated against Rush by denying "full and

5  equal enjoyment" and use of the goods, services, facilities, privileges or

6  accommodations of the Ross Dress for Less Facility during each visit and each

7  incident of deterrence.

8       Failure to Remove Architectural Barriers in an Existing Facility

9       184.   The ADA specifically prohibits failing to remove architectural

10  barriers, which are structural in nature, in existing facilities where such removal

11  is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily

12  achievable" is defined as "easily accomplishable and able to be carried out

13  without much difficulty or expense." Id. § 12181(9).

14       185.   When an entity can demonstrate that removal of a barrier is not

15  readily achievable, a failure to make goods, services, facilities, or

16  accommodations available through alternative methods is also specifically

17  prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

18       186.   Here, Rush alleges that Ross Dress for Less can easily remove the

19  architectural barriers at Ross Dress for Less Facility without much difficulty or

20  expense, and that Ross Dress for Less violated the ADA by failing to remove

21  those barriers, when it was readily achievable to do so.

22       187.   In the alternative, if it was not "readily achievable" for Ross Dress

23  for Less to remove the Ross Dress for Less Facility's barriers, then Ross Dress

24  for Less violated the ADA by failing to make the required services available

25  through alternative methods, which are readily achievable.

26

27

28

1    <u>Failure to Design and Construct an Accessible Facility</u>

2        188.   On information and belief, the Ross Dress for Less Facility was

3    designed or constructed (or both) after January 26, 1992—independently

4    triggering access requirements under Title III of the ADA.

5        189.   The ADA also prohibits designing and constructing facilities for first

6    occupancy after January 26, 1993, that aren't readily accessible to, and usable by,

7    individuals with disabilities when it was structurally practicable to do so. 42

8    U.S.C. § 12183(a)(1).

9        190.   Here, Ross Dress for Less violated the ADA by designing or

10   constructing (or both) the Ross Dress for Less Facility in a manner that was not

11   readily accessible to the physically disabled public—including Rush—when it

12   was structurally practical to do so.[4]

13   <u>Failure to Make an Altered Facility Accessible</u>

14       191.   On information and belief, the Ross Dress for Less Facility was

15   modified after January 26, 1992, independently triggering access requirements

16   under the ADA.

17       192.   The ADA also requires that facilities altered in a manner that affects

18   (or could affect) its usability must be made readily accessible to individuals with

19   disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an

20   area that contains a facility's primary function also requires adding making the

21   paths of travel, bathrooms, telephones, and drinking fountains serving that area

22   accessible to the maximum extent feasible. <u>Id.</u>

23       193.   Here, Ross Dress for Less altered the Ross Dress for Less Facility in

24   a manner that violated the ADA and was not readily accessible to the physically

25   disabled public—including Rush—to the maximum extent feasible.

26

27   _____

[4]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a
28       private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

<u>Failure to Modify Existing Policies and Procedures</u>

194.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

195.   Here, Ross Dress for Less violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Ross Dress for Less Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

196.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

197.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Ross Dress for Less violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

XIX. FOURTEENTH CLAIM

**Disabled Persons Act**

(The Ross Dress for Less Facility)

198.   Rush incorporates the allegations contained in paragraphs 1 through 197 for this claim.

199.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

200.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

201.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

202.   Here, Ross Dress for Less discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Ross Dress for Less Facility.  Ross Dress for Less also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

203.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

204.   She also seeks to enjoin Ross Dress for Less from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XX. FIFTEENTH CLAIM

### Unruh Civil Rights Act

(The Ross Dress for Less Facility)

205.   Rush incorporates the allegations contained in paragraphs 1 through 204 for this claim.

206.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations,

advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

207.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

208.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

209.   Ross Dress for Less's aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

210.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

211.   Rush was damaged by Ross Dress for Less's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

212.   Rush also seeks to enjoin Ross Dress for Less from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XXI. SIXTEENTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Ross Dress for Less Facility)

213.   Rush incorporates the allegations contained in paragraphs 1 through 212 for this claim.

214.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

215.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

216.   Rush alleges the Ross Dress for Less Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Ross Dress for Less Facility was not exempt under Health and Safety Code § 19956.

217.   Ross Dress for Less's non-compliance with these requirements at the Ross Dress for Less Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.   Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXII. SEVENTEENTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Barnes & Noble Facility)

218.   Rush incorporates the allegations contained in paragraphs 1 through 217 for this claim.

219.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

220. Barnes & Noble discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Barnes & Noble Facility during each visit and each incident of deterrence.

### Failure to Remove Architectural Barriers in an Existing Facility

221. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

222. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

223. Here, Rush alleges that Barnes & Noble can easily remove the architectural barriers at Barnes & Noble Facility without much difficulty or expense, and that Barnes & Noble violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

224. In the alternative, if it was not "readily achievable" for Barnes & Noble to remove the Barnes & Noble Facility's barriers, then Barnes & Noble violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Design and Construct an Accessible Facility

225. On information and belief, the Barnes & Noble Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

226.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

227.   Here, Barnes & Noble violated the ADA by designing or constructing (or both) the Barnes & Noble Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[5]

### Failure to Make an Altered Facility Accessible

228.   On information and belief, the Barnes & Noble Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

229.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

230.   Here, Barnes & Noble altered the Barnes & Noble Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

231.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can

---

[5]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

232. Here, Barnes & Noble violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Barnes & Noble Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

233. Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

234. Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Barnes & Noble violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## XXIII. EIGHTEENTH CLAIM

### Disabled Persons Act

(The Barnes & Noble Facility)

235. Rush incorporates the allegations contained in paragraphs 1 through 234 for this claim.

236. California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

237. California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

238.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. <u>See</u> Civil Code §§ 54(c) and 54.1(d).

239.   Here, Barnes & Noble discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Barnes & Noble Facility.  Barnes & Noble also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

240.   <u>For each offense</u> of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

241.   She also seeks to enjoin Barnes & Noble from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XXIV. NINETEENTH CLAIM

### Unruh Civil Rights Act

(The Barnes & Noble Facility)

242.   Rush incorporates the allegations contained in paragraphs 1 through 241 for this claim.

243.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

244.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

245.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

246.   Barnes & Noble's aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

247.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

248.   Rush was damaged by Barnes & Noble's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

249.   Rush also seeks to enjoin Barnes & Noble from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

XXV. TWENTIETH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Barnes & Noble Facility)

250.   Rush incorporates the allegations contained in paragraphs 1 through 249 for this claim.

251.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

252.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

253.   Rush alleges the Barnes & Noble Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Barnes & Noble Facility was not exempt under Health and Safety Code § 19956.

254.   Barnes & Noble's non-compliance with these requirements at the Barnes & Noble Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.   Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

XXVI. TWENTY-FIRST CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Stater Bros. Facility)

255.   Rush incorporates the allegations contained in paragraphs 1 through 254 for this claim.

256.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

257.   Stater Bros. discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Stater Bros. Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

258.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily

achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

259.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

260.   Here, Rush alleges that Stater Bros. can easily remove the architectural barriers at Stater Bros. Facility without much difficulty or expense, and that Stater Bros. violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

261.   In the alternative, if it was not "readily achievable" for Stater Bros. to remove the Stater Bros. Facility's barriers, then Stater Bros. violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

262.   On information and belief, the Stater Bros. Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

263.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

264.   Here, Stater Bros. violated the ADA by designing or constructing (or both) the Stater Bros. Facility in a manner that was not readily accessible to the

physically disabled public—including Rush—when it was structurally practical to do so.[6]

### Failure to Make an Altered Facility Accessible

265.  On information and belief, the Stater Bros. Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

266.  The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

267.  Here, Stater Bros. altered the Stater Bros. Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

### Failure to Modify Existing Policies and Procedures

268.  The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

269.  Here, Stater Bros. violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Stater Bros. Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

---

[6]    Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

270.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

271.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Stater Bros. violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## XXVII. TWENTY-SECOND CLAIM

### Disabled Persons Act

(The Stater Bros. Facility)

272.   Rush incorporates the allegations contained in paragraphs 1 through 271 for this claim.

273.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

274.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

275.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

276.   Here, Stater Bros. discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Stater Bros. Facility.   Stater Bros. also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

277.   <u>For each offense</u> of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

278.   She also seeks to enjoin Stater Bros. from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XXVIII. TWENTY-THIRD CLAIM

### Unruh Civil Rights Act

(The Stater Bros. Facility)

279.   Rush incorporates the allegations contained in paragraphs 1 through 278 for this claim.

280.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

281.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

282.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

283.   Stater Bros.'s aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

284. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

285. Rush was damaged by Stater Bros.'s wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

286. Rush also seeks to enjoin Stater Bros. from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## XXIX. TWENTY-FOURTH CLAIM

### Denial of Full and Equal Access to Public Facilities

(The Stater Bros. Facility)

287. Rush incorporates the allegations contained in paragraphs 1 through 286 for this claim.

288. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

289. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

290. Rush alleges the Stater Bros. Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Stater Bros. Facility was not exempt under Health and Safety Code § 19956.

291. Stater Bros.'s non-compliance with these requirements at the Stater Bros. Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.  Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

XXX. TWENTY-FIFTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The McDonald's Facility)

292.   Rush incorporates the allegations contained in paragraphs 1 through 291 for this claim.

293.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

294.   McDonald's discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the McDonald's Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

295.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

296.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

297.   Here, Rush alleges that McDonald's can easily remove the architectural barriers at McDonald's Facility without much difficulty or expense,

and that McDonald's violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

298.   In the alternative, if it was not "readily achievable" for McDonald's to remove the McDonald's Facility's barriers, then McDonald's violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

299.   On information and belief, the McDonald's Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

300.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

301.   Here, McDonald's violated the ADA by designing or constructing (or both) the McDonald's Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[7]

<u>Failure to Make an Altered Facility Accessible</u>

302.   On information and belief, the McDonald's Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

303.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an

---

[7]    Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

304.   Here, McDonald's altered the McDonald's Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

305.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

306.   Here, McDonald's violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the McDonald's Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

307.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

308.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that McDonald's violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

XXXI. TWENTY-SIXTH CLAIM

**Disabled Persons Act**

(The McDonald's Facility)

309.   Rush incorporates the allegations contained in paragraphs 1 through 308 for this claim.

310.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

311.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

312.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

313.   Here, McDonald's discriminated against the physically disabled public—including Rush—by denying them full and equal access to the McDonald's Facility.  McDonald's also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

314.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

315.   She also seeks to enjoin McDonald's from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

1

## XXXII. TWENTY-SEVENTH CLAIM

2

**Unruh Civil Rights Act**

3

(The McDonald's Facility)

4   316.   Rush incorporates the allegations contained in paragraphs 1 through

5   315 for this claim.

6   317.   California Civil Code § 51 states, in part, that: All persons within the

7   jurisdiction of this state are entitled to the full and equal accommodations,

8   advantages, facilities, privileges, or services in all business establishments of

9   every kind whatsoever.

10   318.   California Civil Code § 51.5 also states, in part, that: No business

11   establishment of any kind whatsoever shall discriminate against any person in

12   this state because of the disability of the person.

13   319.   California Civil Code § 51(f) specifically incorporates (by reference)

14   an individual's rights under the ADA into the Unruh Act.

15   320.   McDonalds' aforementioned acts and omissions denied the

16   physically disabled public—including Rush—full and equal accommodations,

17   advantages, facilities, privileges and services in a business establishment

18   (because of their physical disability).

19   321.   These acts and omissions (including the ones that violate the ADA)

20   denied, aided or incited a denial, or discriminated against Rush by violating the

21   Unruh Act.

22   322.   Rush was damaged by McDonalds' wrongful conduct, and seeks

23   statutory minimum damages of four thousand dollars ($4,000) for each offense.

24   323.   Rush also seeks to enjoin McDonald's from violating the Unruh Act

25   (and ADA), and recover reasonable attorneys' fees and costs incurred under

26   California Civil Code § 52(a).

27

28

## XXXIII. TWENTY-EIGHTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The McDonald's Facility)

324. Rush incorporates the allegations contained in paragraphs 1 through 323 for this claim.

325. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

326. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

327. Rush alleges the McDonald's Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the McDonald's Facility was not exempt under Health and Safety Code § 19956.

328. McDonalds' non-compliance with these requirements at the McDonald's Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities. Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXXIV. TWENTY-NINTH CLAIM

**Americans with Disabilities Act of 1990**

Denial of "Full and Equal" Enjoyment and Use

(The Petsmart Facility)

329. Rush incorporates the allegations contained in paragraphs 1 through 328 for this claim.

330. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment

1   (or use) of goods, services, facilities, privileges, and accommodations offered by

2   any person who owns, operates, or leases a place of public accommodation. 42

3   U.S.C. § 12182(a).

4       331.   Petsmart discriminated against Rush by denying "full and equal

5   enjoyment" and use of the goods, services, facilities, privileges or

6   accommodations of the Petsmart Facility during each visit and each incident of

7   deterrence.

8           Failure to Remove Architectural Barriers in an Existing Facility

9       332.   The ADA specifically prohibits failing to remove architectural

10   barriers, which are structural in nature, in existing facilities where such removal

11   is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily

12   achievable" is defined as "easily accomplishable and able to be carried out

13   without much difficulty or expense." Id. § 12181(9).

14       333.   When an entity can demonstrate that removal of a barrier is not

15   readily achievable, a failure to make goods, services, facilities, or

16   accommodations available through alternative methods is also specifically

17   prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

18       334.   Here, Rush alleges that Petsmart can easily remove the architectural

19   barriers at Petsmart Facility without much difficulty or expense, and that

20   Petsmart violated the ADA by failing to remove those barriers, when it was

21   readily achievable to do so.

22       335.   In the alternative, if it was not "readily achievable" for Petsmart to

23   remove the Petsmart Facility's barriers, then Petsmart violated the ADA by

24   failing to make the required services available through alternative methods,

25   which are readily achievable.

26

27

28

## Failure to Design and Construct an Accessible Facility

336.   On information and belief, the Petsmart Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

337.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

338.   Here, Petsmart violated the ADA by designing or constructing (or both) the Petsmart Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[8]

## Failure to Make an Altered Facility Accessible

339.   On information and belief, the Petsmart Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

340.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

341.   Here, Petsmart altered the Petsmart Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

---

[8]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

Page 66

<u>Failure to Modify Existing Policies and Procedures</u>

342.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

343.   Here, Petsmart violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Petsmart Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

344.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

345.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Petsmart violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## XXXV. THIRTIETH CLAIM

### Disabled Persons Act

(The Petsmart Facility)

346.   Rush incorporates the allegations contained in paragraphs 1 through 345 for this claim.

347.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

348.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations,

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

349.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

350.   Here, Petsmart discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Petsmart Facility.   Petsmart also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

351.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

352.   She also seeks to enjoin Petsmart from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XXXVI. THIRTY-FIRST CLAIM

**Unruh Civil Rights Act**

(The Petsmart Facility)

353.   Rush incorporates the allegations contained in paragraphs 1 through 352 for this claim.

354.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

Page 68

355.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

356.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

357.   Petsmart's aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

358.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

359.   Rush was damaged by Petsmart's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

360.   Rush also seeks to enjoin Petsmart from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

XXXVII. THIRTY-SECOND CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Petsmart Facility)

361.   Rush incorporates the allegations contained in paragraphs 1 through 360 for this claim.

362.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

363.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

364.   Rush alleges the Petsmart Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Petsmart Facility was not exempt under Health and Safety Code § 19956.

365.   Petsmart's non-compliance with these requirements at the Petsmart Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.  Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XXXVIII. THIRTY-THIRD CLAIM

### Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Target Facility)

366.   Rush incorporates the allegations contained in paragraphs 1 through 365 for this claim.

367.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

368.   Target discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Target Facility during each visit and each incident of deterrence.

1

Failure to Remove Architectural Barriers in an Existing Facility

2

369.   The ADA specifically prohibits failing to remove architectural

3 barriers, which are structural in nature, in existing facilities where such removal

4 is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily

5 achievable" is defined as "easily accomplishable and able to be carried out

6 without much difficulty or expense." Id. § 12181(9).

7

370.   When an entity can demonstrate that removal of a barrier is not

8 readily achievable, a failure to make goods, services, facilities, or

9 accommodations available through alternative methods is also specifically

10 prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

11

371.   Here, Rush alleges that Target can easily remove the architectural

12 barriers at Target Facility without much difficulty or expense, and that Target

13 violated the ADA by failing to remove those barriers, when it was readily

14 achievable to do so.

15

372.   In the alternative, if it was not "readily achievable" for Target to

16 remove the Target Facility's barriers, then Target violated the ADA by failing to

17 make the required services available through alternative methods, which are

18 readily achievable.

19

Failure to Design and Construct an Accessible Facility

20

373.   On information and belief, the Target Facility was designed or

21 constructed (or both) after January 26, 1992—independently triggering access

22 requirements under Title III of the ADA.

23

374.   The ADA also prohibits designing and constructing facilities for first

24 occupancy after January 26, 1993, that aren't readily accessible to, and usable by,

25 individuals with disabilities when it was structurally practicable to do so. 42

26 U.S.C. § 12183(a)(1).

27

28

375.   Here, Target violated the ADA by designing or constructing (or both) the Target Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[9]

Failure to Make an Altered Facility Accessible

376.   On information and belief, the Target Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

377.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

378.   Here, Target altered the Target Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

Failure to Modify Existing Policies and Procedures

379.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

380.   Here, Target violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Target Facility, when

---

[9]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

381.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

382.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Target violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## XXXIX. THIRTY-FOURTH CLAIM

### Disabled Persons Act

(The Target Facility)

383.   Rush incorporates the allegations contained in paragraphs 1 through 382 for this claim.

384.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

385.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

386.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

387.   Here, Target discriminated against the physically disabled public— including Rush—by denying them full and equal access to the Target Facility. Target also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

388.   <u>For each offense</u> of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

389.   She also seeks to enjoin Target from violating the Disabled Persons Act (and ADA) under California Civil Code § 55, and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

XL. THIRTY-FIFTH CLAIM

**Unruh Civil Rights Act**

(The Target Facility)

390.   Rush incorporates the allegations contained in paragraphs 1 through 389 for this claim.

391.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

392.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

393.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

394.   Target's aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

395.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

396.   Rush was damaged by Target's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each offense</u>.

397.   Rush also seeks to enjoin Target from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

XLI. THIRTY-SIXTH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Target Facility)

398.   Rush incorporates the allegations contained in paragraphs 1 through 397 for this claim.

399.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

400.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

401.   Rush alleges the Target Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Target Facility was not exempt under Health and Safety Code § 19956.

402.   Target's non-compliance with these requirements at the Target Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities.  Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

# XLII. THIRTY-SEVENTH CLAIM

## Americans with Disabilities Act of 1990

Denial of "Full and Equal" Enjoyment and Use

(The Encinitas Ranch Town CenterFacility)

403.   Rush incorporates the allegations contained in paragraphs 1 through 402. for this claim.

404.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

405.  Encinitas Ranch Town Center discriminated against Rush by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Encinitas Ranch Town Center Facility during each visit and each incident of deterrence.

Failure to Remove Architectural Barriers in an Existing Facility

406.   The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).   The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9).

407.   When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

408.   Here, Rush alleges that Encinitas Ranch Town Center can easily remove the architectural barriers at Encinitas Ranch Town Center Facility

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

without much difficulty or expense, and that Encinitas Ranch Town Center violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

409.   In the alternative, if it was not "readily achievable" for Encinitas Ranch Town Center to remove the Encinitas Ranch Town Center Facility's barriers, then Encinitas Ranch Town Center violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

<u>Failure to Design and Construct an Accessible Facility</u>

410.   On information and belief, the Encinitas Ranch Town Center Facility was designed or constructed (or both) after January 26, 1992—independently triggering access requirements under Title III of the ADA.

411.   The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

412.   Here, Encinitas Ranch Town Center violated the ADA by designing or constructing (or both) the Encinitas Ranch Town Center Facility in a manner that was not readily accessible to the physically disabled public—including Rush—when it was structurally practical to do so.[10]

<u>Failure to Make an Altered Facility Accessible</u>

413.   On information and belief, the Encinitas Ranch Town Center Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

---

[10]   Nothing within this Complaint should be construed as an allegation that plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

414.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).  Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

415.   Here, Encinitas Ranch Town Center altered the Encinitas Ranch Town Center Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public—including Rush—to the maximum extent feasible.

<u>Failure to Modify Existing Policies and Procedures</u>

416.   The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

417.   Here, Encinitas Ranch Town Center violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Encinitas Ranch Town Center Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

418.   Rush seeks all relief available under the ADA (*i.e.*, injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

419.   Rush also seeks a finding from this Court (*i.e.,* declaratory relief) that Encinitas Ranch Town Center violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

# XLIII. THIRTY-EIGHTH CLAIM

## Disabled Persons Act

### (The Encinitas Ranch Town Center Facility)

420.   Rush incorporates the allegations contained in paragraphs 1 through 419 for this claim.

421.   California Civil Code § 54 states, in part, that: Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places.

422.   California Civil Code § 54.1 also states, in part, that: Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited.

423.   Both sections specifically incorporate (by reference) an individual's rights under the ADA. See Civil Code §§ 54(c) and 54.1(d).

424.   Here, Encinitas Ranch Town Center discriminated against the physically disabled public—including Rush—by denying them full and equal access to the Encinitas Ranch Town Center Facility.   Encinitas Ranch Town Center also violated Rush's rights under the ADA, and, therefore, infringed upon or violated (or both) Rush's rights under the Disabled Persons Act.

425.   For each offense of the Disabled Persons Act, Rush seeks actual damages (both general and special damages), statutory minimum damages of one thousand dollars ($1,000), declaratory relief, and any other remedy available under California Civil Code § 54.3.

426.   She also seeks to enjoin Encinitas Ranch Town Center from violating the Disabled Persons Act (and ADA) under California Civil Code § 55,

and to recover reasonable attorneys' fees and incurred under California Civil Code §§ 54.3 and 55.

## XLIV. THIRTY-NINTH CLAIM

**Unruh Civil Rights Act**

(The Encinitas Ranch Town Center Facility)

427.   Rush incorporates the allegations contained in paragraphs 1 through 426 for this claim.

428.   California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

429.   California Civil Code § 51.5 also states, in part, that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

430.   California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

431.   Encinitas Ranch Town Center's aforementioned acts and omissions denied the physically disabled public—including Rush—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

432.   These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Rush by violating the Unruh Act.

433.   Rush was damaged by Encinitas Ranch Town Center's wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

434.   Rush also seeks to enjoin Encinitas Ranch Town Center from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

### XLV. FORTIETH CLAIM

**Denial of Full and Equal Access to Public Facilities**

(The Encinitas Ranch Town Center Facility)

435.   Rush incorporates the allegations contained in paragraphs 1 through 434 for this claim.

436.   Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

437.   Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

438.   Rush alleges the Encinitas Ranch Town Center Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Encinitas Ranch Town Center Facility was not exempt under Health and Safety Code § 19956.

439.   Encinitas Ranch Town Center's non-compliance with these requirements at the Encinitas Ranch Town Center Facility aggrieved (or potentially aggrieved) Rush and other persons with physical disabilities. Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against Party City for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Party City violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[11]

5.      Interest at the legal rate from the date of the filing of this action.

PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against Office Depot for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Office Depot violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[12]

5.      Interest at the legal rate from the date of the filing of this action.

---

[11]    This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[12]    This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

Page 82

PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against Best Buy for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Best Buy violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[13]

5.      Interest at the legal rate from the date of the filing of this action.

PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against Ross Dress for Less for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Ross Dress for Less violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[14]

5.      Interest at the legal rate from the date of the filing of this action.

---

[13]     This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[14]     This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against Barnes & Noble for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Barnes & Noble violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[15]

5.      Interest at the legal rate from the date of the filing of this action.

PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against Stater Bros. for:

1.      Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.      Declaratory relief that Stater Bros. violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.      Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.      Attorneys' fees, litigation expenses, and costs of suit.[16]

5.      Interest at the legal rate from the date of the filing of this action.

---

[15]    This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[16]    This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

1

PRAYER FOR RELIEF

2       WHEREFORE, Rush prays judgment against McDonald's for:

3       1.      Injunctive relief, preventive relief, or any other relief the Court

4  deems proper.

5       2.      Declaratory relief that McDonald's violated the ADA for the

6  purposes of Unruh Act or Disabled Persons Act damages.

7       3.      Statutory minimum damages under either sections 52(a) or 54.3(a)

8  of the California Civil Code (but not both) according to proof.

9       4.      Attorneys' fees, litigation expenses, and costs of suit.[17]

10      5.      Interest at the legal rate from the date of the filing of this action.

11

PRAYER FOR RELIEF

12      WHEREFORE, Rush prays judgment against Petsmart for:

13      1.      Injunctive relief, preventive relief, or any other relief the Court

14  deems proper.

15      2.      Declaratory relief that Petsmart violated the ADA for the purposes

16  of Unruh Act or Disabled Persons Act damages.

17      3.      Statutory minimum damages under either sections 52(a) or 54.3(a)

18  of the California Civil Code (but not both) according to proof.

19      4.      Attorneys' fees, litigation expenses, and costs of suit.[18]

20      5.      Interest at the legal rate from the date of the filing of this action.

21

22

23

24

25

26

27

28

---

[17]  This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[18]  This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

Page 85

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against Target for:

1.       Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.       Declaratory relief that Target violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.       Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.       Attorneys' fees, litigation expenses, and costs of suit.[19]

5.       Interest at the legal rate from the date of the filing of this action.

PRAYER FOR RELIEF

WHEREFORE, Rush prays judgment against Encinitas Ranch Town Center for:

1.       Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.       Declaratory relief that Encinitas Ranch Town Center violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3.       Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4.       Attorneys' fees, litigation expenses, and costs of suit.[20]

5.       Interest at the legal rate from the date of the filing of this action.

DATED: December 20, 2011     DISABLED ADVOCACY GROUP, APLC


*/s/ Lynn Hubbard, III*
LYNN HUBBARD, III
Attorney for Plaintiff

---

[19]     This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
[20]     This includes attorneys' fees under California Code of Civil Procedure § 1021.5.
*Rush v. Encinitas Town Center Associates I, LLC, et al.*
Plaintiff's Complaint

Page 86

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
SANDI RUSH

**DEFENDANTS**
SEE ATTACHED LIST

**(b)** County of Residence of First Listed Plaintiff    SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

LYNN HUBBARD, III    DISABLED ADVOCACY GROUP, APLC
12 Williamsburg Lane   Chico, CA 95926   (530) 895-3252

Attorneys (If Known)

'11 CV2987 DMS POR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☒ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 12101, et seq.
Brief description of cause:
Ongoing violations of the ADA Construction Standards

## VII. REQUESTED IN
COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☒ No

## VIII. RELATED CASE(S)
IF ANY
(See instructions):
JUDGE                DOCKET NUMBER

DATE
12/22/2011

SIGNATURE OF ATTORNEY OF RECORD
/s/ Lynn Hubbard, III

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# DEFENDANT LIST

1. Encinitas Town Center Associates I, LLC;
2. Zelman Development Co.;
3. Party City Corp. dba Party City #526;
4. Office Depot, Inc. dba Office Depot #965;
5. Best Buy Stores, LP dba Best Buy #1187;
6. Ross Dress for Less, Inc. dba Ross Dress for Less #359;
7. Barnes & Noble Booksellers, Inc. dba Barnes & Noble Super Store #2785;
8. Stater Bros. Markets dba Stater Bros. Market #6158;
9. K R Schulz Management, Inc. dba McDonald's #14229;
10. McDonald's Corporation;
11. Petsmart, Inc. dba Petsmart #144;
12. Target Corporation dba Target #1029